```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
```
      USDC SDNY
      DOCUMENT
      ELECTRONICALLY FILED
      DOC #: _____
      DATE FILED: 06/28/2023

HECTOR MELENDEZ, *on behalf of himself and all others similarly situated*,

    Plaintiff,

-against-

COSAN CONSTRUCTION CORP., et al.,

    Defendants.

21-CV-7426 (BCM)

**ORDER**

**BARBARA MOSES, United States Magistrate Judge.**

      The Court has received and reviewed the parties' joint letter dated May 24, 2023 (Joint Ltr.) (Dkt. 45 at ECF pp. 1-5), seeking the Court's approval of their fully-executed Settlement Agreement and Release (Agreement) (Dkt. 45 at ECF pp. 7-16) pursuant to *Cheeks v. Freeport Pancake House*, 796 F.3d 199 (2d Cir. 2015). The Agreement requires defendants Cosan Construction Corp., Cosan New York Inc., and Terence Ferguson, collectively, to pay $35,000 to settle plaintiff Hector Melendez's claims under the Fair Labor Standards Act (FLSA) and the New York Labor Law (NYLL). Of that sum, $14,152.18 will go to plaintiff's attorney as fees and expense reimbursement, leaving $20,847.82 for plaintiff himself. The Court agrees that the economic terms of the Agreement, including the fee allocation, are fair and reasonable. However, the Agreement contains an impermissible "no-publicity" clause that prevents the Court from approving it. Consequently, the motion is DENIED without prejudice to the submission of a revised agreement that excises the impermissible restriction.

## Background

      Plaintiff Melendez, a construction laborer, filed this action on September 3, 2021, seeking damages for unpaid overtime wages and related relief under the FLSA and NYLL. Compl. (Dkt. 1) ¶¶ 4-8. He principally alleged that throughout his employment by defendants (from October 2017 through August 2021), he was paid at his regular hourly rate for all of his working hours, including

his overtime hours, for which he should have been paid one and one-half times his regular rate. *Id.* ¶¶ 31-37, 76-87. Plaintiff further alleged that he was unlawfully terminated in August 2021 in retaliation for having spoken to an investigator from the New York State Department of Labor about his wages. *Id.* ¶¶ 40-49, 86-91. Additionally, according to plaintiff, he was never given the annual wage notices and wage statements required by the Wage Theft Prevention Act, NYLL §§ 195(1) and 195(3). *Id.* ¶¶ 50-54, 88-95. On December 14, 2021, the Hon. Valerie Caproni, United States District Judge, granted defendants' motion to compel arbitration of plaintiff's claims, and stayed this action pending the outcome of the arbitration. (Dkt. 26.)

On March 13, 2023, after reaching a settlement "on the eve of the Arbitration hearing," *see* Finkelstein Decl. (Dkt. 41-1) ¶ 12, the parties filed a stipulation of voluntary dismissal with prejudice pursuant to Fed. R. Civ. P. 41(a)(1)(A)(ii). (Dkt. 33.) However, on March 15, 2023, the Hon. Jennifer Rochon, United States District Judge, to whom this case had been reassigned, reminded the parties that, "in most cases, settlements of claims under the FLSA must be approved by the Court." (Dkt. 35.) Judge Rochon ordered the parties to submit their settlement for judicial review pursuant to *Cheeks*, and referred the case to me for that review. (Dkt. 34.) On March 17, 2023, I directed the parties to file their agreement, together with a joint letter demonstrating that its terms are fair and reasonable and should be approved in light of the factors enumerated in *Wolinsky v. Scholastic Inc.*, 900 F. Supp. 2d 332, 335-36 (S.D.N.Y. 2012). (Dkt. 36.)

On March 30, 3023, the parties consented to my jurisdiction for all purposes. (Dkt. 38.) On April 21, 2023, they filed a motion seeking relief from the obligation to present their settlement for judicial review. (Dkt. 41.) On May 10, 2023, I denied that motion and ordered the parties to submit their agreement, together with a joint letter and supporting documents, as previously directed. *Melendez v. Cosan Constr. Corp.*, 2023 WL 3336549, at *1 (S.D.N.Y. May 10, 2023).

2

On May 24, 2023, the parties timely filed the Joint Letter and other required materials, except for plaintiff's damages spreadsheet and the retainer agreement with his counsel, which plaintiff filed on June 27, 2023. (*See* Dkts. 46-47.)

## **Legal Standards**

In the Second Circuit, settlements of FLSA claims require approval by the district court or the U.S. Department of Labor. *Fisher v. SD Prot. Inc.*, 948 F.3d 593, 599 (2d Cir. 2020); *Cheeks*, 796 F.3d at 206 (noting the "potential for abuse" inherent in "highly restrictive confidentiality provisions," overbroad releases, and unconscionable fee provisions, as well as economically inadequate settlements achieved through pressure tactics) (citation omitted). This requirement applies to settlements "executed while a case is stayed in favor of arbitration," just as it does to settlements executed while the case is in active litigation before the district court. *Melendez*, 2023 WL 3336549, at *3; *accord Latture v. 101-109 Cafe Inc.*, 2022 WL 17577865, at *1-2 (E.D.N.Y. Dec. 12, 2022); *Caccavelli v. Jetro Cash & Carry Enters., LLC*, 2020 WL 5752104, at *1 (E.D.N.Y. Sept. 25, 2020); *Brittle v. Metamorphosis, LLC*, 2021 WL 606244, at *1-2 (S.D.N.Y. Jan. 22, 2021); *Moton v. Maplebear Inc.*, 2016 WL 616343, at *6 (S.D.N.Y. Feb. 9, 2016).

When asked for its approval, the district court must scrutinize the settlement to determine whether it is "fair and reasonable" to the settling plaintiff. *Seck v. Dipna Rx, Inc.*, 2017 WL 1906887, at *3 (S.D.N.Y. May 8, 2017); *Wolinsky*, 900 F. Supp. 2d at 335. A fair settlement must reflect "a reasonable compromise of disputed issues rather than a mere waiver of statutory rights brought about by an employer's overreaching." *Mamani v. Licetti*, 2014 WL 2971050, at *1 (S.D.N.Y. July 2, 2014) (quoting *Le v. SITA Info. Networking Computing USA, Inc.*, 2008 WL 724155, at *1 (E.D.N.Y. Mar. 13, 2008)). To make this determination, courts consider "the totality

of circumstances," *Chevalier v. Staffpro, Inc.*, 2021 WL 949749, at *1 (S.D.N.Y. Mar. 12, 2021), including the following factors:

> (1) the plaintiff's range of possible recovery; (2) the extent to which the settlement will enable the parties to avoid anticipated burdens and expenses in establishing their respective claims and defenses; (3) the seriousness of the litigation risks faced by the parties; (4) whether the settlement agreement is the product of arm's-length bargaining between experienced counsel; and (5) the possibility of fraud or collusion.

*Wolinsky*, 900 F. Supp. 2d at 335 (internal quotations and citations omitted); *accord Chevalier*, 2021 WL 949749 at *1. Where a settlement agreement provides for attorneys' fees and costs, district courts "also evaluate the reasonableness of the fees and costs," *Fisher*, 948 F.3d at 600, in light of – among other things – the attorneys' "efforts in litigating th[e] case and [their] success in negotiating a favorable settlement[.]" *Id.* at 607.

## Analysis

The Court finds that the economic terms of the settlement are fair and reasonable to plaintiff. Under the Agreement, defendants will pay $35,000 in four installments, with the last payment due 90 days after "the Court's approval of the Agreement." Ag. § B(1)(b). Of that sum, $14,152.18 will go to plaintiff's attorney as reimbursement for his expenses and for his fees, leaving $20,847.82 for Melendez. *Id.* § B(1); Joint Ltr. at 1-3.[1]

According to the parties, plaintiff's "best scenario" is approximately $28,728 "in unpaid minimum wages, unpaid overtime wages and liquidated damages." Joint Ltr. at 2. Although this figure is somewhat inconsistent with plaintiff's underlying damages spreadsheet,[2] it is clear that

---

[1] Plaintiff's counsel incurred expenses of $3,733.31, *see* Joint Ltr. at 3, meaning that the net settlement payment is $31,266.69, and counsel's fee, if the Agreement is approved, will be $10,418.87, representing approximately one-third of that net settlement payment.

[2] The spreadsheet submitted on June 27, 2023 (Spreadsheet) (Dkt. 46-3 at ECF p. 1), lists "unpaid overtime (OT) wages" of $7,933.08; liquidated damages in the same amount; prejudgment interest (as of December 15, 2022) of $2,020.65; and "notice damages" of $10,000, plus another $21,000

4

the gross settlement payment far exceeds the damages that plaintiff could hope to recover on his claims for unpaid overtime wages – including liquidated damages and interest – and violations of the Wage Theft Prevention Act. Even if the Court includes plaintiff's estimate of $21,000 in lost wages due to his allegedly retaliatory discharge, *see* Spreadsheet, the gross settlement payment of $35,000 would represent approximately 72% of his maximum recoverable damages (excluding only punitive damages), which is a fairly healthy settlement in a contested case such as this one. *See Khan v. Dunwoodie Gas Station, Inc.*, 2020 WL 1166180, at *3 (S.D.N.Y. Mar. 10, 2020) ("Precedent confirms that securing two-thirds of a potential total recovery is generally deemed fair, reasonable, and adequate.").[3] Moreover, the Agreement was negotiated at arms' length between experienced counsel after vigorous litigation, including written discovery and depositions, *see* Joint Ltr. at 3, and was translated into Spanish for plaintiff. Ag. § G(2)(h). There is no suggestion in the record of fraud or collusion.

The proposed attorney's fee is also fair, in that it comes to one-third of the net settlement payment; is consistent with the contingency agreement that plaintiff signed (*see* Dkt. 46-1 (in English) at ECF pp. 1-2; Dkt. 46-2 (in Spanish) at ECF pp. 1-2); and represents approximately 60% of counsel's stated lodestar of $17,374.70. *See* Jt. Ltr. Ex. B (Dkt. 45 at ECF pp. 18-24) at

---

in "lost wages due to retaliation" and $5,000 in "punitive damages for unlawful terminatio[n]." These figures add up to $27,886.81, *excluding* the retaliation damages. If another six months of interest is added, at the New York statutory rate of 9%, the resulting sum (again, *excluding* the retaliation damages) would be approximately $28,244. It thus appears that the "best scenario" figure appearing in the parties' joint letter includes the damages that plaintiff could recover on his overtime and Wage Theft Prevention Act claims, but not the additional damages associated with his retaliation claim.

[3] As the parties note in their joint letter, defendants dispute plaintiff's allegations and assert, among other things, that his alleged hours worked "are inconsistent with Cosan Construction's time records," and that plaintiff was in fact compensated for his overtime hours at time-and-a-half. Joint Ltr. at 2.

ECF p. 23. Given the degree of success obtained by counsel in this action, the fee award is not excessive.

The non-economic terms of the settlement are also fair, with one exception. Plaintiff will release defendants and their affiliates from any and all "labor law claims that were or could have been brought by Plaintiff in the Litigation or the Arbitration, including but not limited to claims for unpaid compensation, unpaid minimum wages, unpaid overtime wages, record keeping violations, wage statement violations, and any claims under any provisions of the Fair Labor Standards Act and/or the New York Labor Law[.]" Ag. § D(1). There is no broad-form general release, and no rehiring prohibition.

Nor, strictly speaking, is there a confidentiality clause. Instead, there is a "No Publicity" clause that would prevent both Melendez and his lawyer from making "statements to the press" regarding the settlement, even if those statements are completely accurate:

> Consistent with the confidentiality of the Arbitration and the intent of the Arbitration Agreement more generally, Plaintiff's counsel shall not specifically advertise this settlement and/or issue a press release concerning the settlement of this Litigation and/or the Arbitration. Further, no Party or their respective counsel may otherwise make any statements to the press regarding the settlement of this Litigation and/or the Arbitration other than that, if questioned, the matter was settled.

Ag. § H(14).

The Court cannot approve this provision. Settlement terms that significantly limit an FLSA plaintiff's ability to communicate truthful information about his settlement are "contrary to public policy because they prevent the spread of information about FLSA actions to other workers (both employees of Defendants and others), who can then use that information to vindicate their statutory rights." *Lopez v. Ploy Dee, Inc.*, 2016 WL 1626631, at *3 (S.D.N.Y. Apr. 21, 2016); *see also Camacho v. Ess-A-Bagel, Inc.*, 2015 WL 129723, at *2 (S.D.N.Y. Jan. 9, 2015) ("non-disclosure

6

provisions prevent workers from using a win to publicize both the wrongdoing of the employer and the possibility of success more generally") (internal quotation marks omitted).

Here, both Melendez and his lawyer would be prevented from issuing a press release or speaking to the press about their "win," that is, from using what may be the most efficient means available to "publicize both the wrongdoing of the employer and the possibility of success more generally." *Camacho*, 2015 WL 129723, at *2. Courts within our Circuit have rejected similar provisions, even where they are bilateral. *See, e.g., Chung v. Brooke's Homecare LLC*, 2018 WL 2186413, at *2 (S.D.N.Y. May 11, 2018) (Nathan, J.) (rejecting a provision "prohibiting any party or his counsel from issuing, posting, or sending any 'press release, email, and/or other written, electronic, digital and/or verbal communications to any entity and/or person and/or agent and/or independent contractor associated in any way with the' print media and 'digital and/or electronic media of any type . . .'"). In this case, the clause is unilateral, "leaving [defendants] at liberty to say what [they] like[], in any forum [they] choose[], about [Melendez] and [his] lawsuit." *Barsa v. Beacon Health Options, Inc.*, 2020 WL 7240346, at *8 (S.D.N.Y. July 10, 2020) (rejecting FLSA settlement agreement that would have prevented the lead plaintiff and her lawyers from discussing the case "in the media"). Absent a compelling justification, which the parties here have failed to provide, the no-publicity clause in § H(14) of the Agreement "violates the public policy animating the FLSA and is therefore unenforceable." *Id.*

## Conclusion

For the reasons set forth above, the parties' motion for approval of their proposed settlement (Dkt. 45) is DENIED without prejudice to renewal once they have excised or significantly

7

modified the no-publicity clause. If no renewed settlement approval motion is made within 30 days of today's date, the parties shall proceed with the arbitration.

Dated: New York, New York
      June 28, 2023                    SO ORDERED.

_____
**BARBARA MOSES**
**United States Magistrate Judge**